UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JEFFREY NESGI,

                     Plaintiff,

            -against-

THE CITY OF NEW YORK (CITY); THE NEW YORK CITY POLICE DEPARTMENT (NYPD); IN HIS OFFICIAL CAPACITY AS THEN NEW YORK CITY POLICE OFFICER, EDDIE MARTINS.

                     Defendants.

-----------------------------------------------------------

Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, JEFFREY NESGI, by and through his attorney RUDY VELEZ, Esq., respectfully shows to this court and alleges, as follows:

**INTRODUCTION**

1. Plaintiff, JEFFREY (NESGI) brings this action seeking compensatory damages against the City of New York named herein, and alleges based upon the personal knowledge of Plaintiff, the investigation of counsel, and open information and belief.

**PRELIMINARY STATEMENT**

2. Specifically, defendant CITY knew or should have known that defendants, the aforementioned disgraced police officer in the narcotics division in Brooklyn, through his key participation, NESGI to prison by denying him due process of law. This ex-police officer engaged in a pattern and practice of illegal and unconstitutional conduct, including malicious prosecution, fabricating evidence, denial of due process of law,

1

perjury in circumventing Fourth Amendment restrictions, and arrests without probable cause.

3. The conviction against, NESGI, that this ex-police officer claimed either possessed or sold drugs was thrown out. The disgraced officers' pattern and practice of violating people's civil rights, in addition to other disgraced officers were repeated some 378 times, see EXHIBIT A: Brooklyn Press Release September 7, 2022 KCDAO. In each of these cases, these disgraced officers compounded their misconduct by repeating their lies over and over again.

4. In a statement by the Brooklyn District Attorney's Office, the District Attorney vowed to continue to bring the full weight of the law against uniformed police officers who lie and undermine the public trust in law enforcement which we rely on to keep New York safe, see EXHIBIT B: New York News, September 7, 2022

## JURISDICTION AND VENUE

5. This action is brought forth pursuant to 42 U.S.C 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York.

6. Jurisdiction is founded upon 28 U.S.C § 1331, 1343 (1-4) and 2202.

7. Venue is proper in this district pursuant to 28 U.S.C § 1391 (b).

## JURY DEMAND

8. Plaintiff demand trial by jury in this action.

## PARTIES

9. Plaintiff, JEFFREY NESGI (NESGI), is an American Citizen residing in Brooklyn, New York. On behalf of all others similarly situated, plaintiff brings this action against defendants seeking money damages and further relief that may be just and proper.

10. Defendant, CITY OF NEW YORK (CITY), is a municipal corporation organized under the laws of the State of New York and the public employer of the ex-police officers named as defendants in this action. Defendant NEW YORK CITY POLICE DEPARTMENT (NYPD) is an agency of the City of New York.

11. Defendant NEW YORK CITY POLICE DEPARTMENT (NYPD) is an agency of the City of New York, existing and operating by virtue of the laws of the state of New York and the City of New York.

12. At all times relevant herein, the defendant was acting under color of state law.

## FACTUAL ALLEGATIONS OF JEFFEREY NESGI

13. On February 24, 2015, at approximately 07:40 P.M., Plaintiff was in the vicinity of West 7th Street, Brooklyn, New York with a few friends. **EX-POLICE OFFICER MARTINS** claimed he observed **NESGI in possession of a controlled substance, to wit: crack-cocaine. NESGI** was arrested and taken to Brooklyn Central Booking. These charges were entirely fabricated against **NESGI.** Plaintiff did not possess narcotics. In his own Criminal Court Complaint, Police Officer Eddie Martins claimed he observed NESGI in possession of crack-cocaine. This sworn statement was fabricated because **MARTINS never made such an observation.**

14. Plaintiff's conviction for criminal possession of a controlled substance in the seventh Degree was vacated, and his indictment dismissed with the consent of the Brooklyn

3

District Attorney's Office on the November 4, 2022, See EXHIBIT C: NESGI Writ of Error Coram Nobis. Other convictions from cases in which these ex-police officers played a key role were also vacated and dismissed in 2022. see EXHIBIT D: *Local News, District Attorney Tossing More Drug Cases Tied To N.Y.P.D Accused of Framing Innocent People.*

15. According to various newspaper and media accounts, some 378 criminal convictions tied to the testimony of former N.Y.P.D officers accused of lying and framing innocent people, have been thrown out. See EXHIBIT A: INFRA: Press Release, September 7th, 2023. By KCDAO

16. The Brooklyn District Attorney's office began an exhaustive review of cases hinging on these officers' testimony and sworn statements and discovered that these officers committed well over 300 acts of police misconduct, ranging from providing false statements to perjury, when they worked as undercover police officers in the Brooklyn from 2005-2015.

17. The impact of the writ of error coram nobis on the federal civil rights lawsuits is devastating. Although the writs upon which each of the 378 convictions were vacated specifically state the District Attorney has not identified any information or evidence indicative of innocence and that probable cause existed for plaintiffs' arrest, neither innocence or probable cause are a defense to a claim for a Due Process Violation, such as is claimed here, Count no. (3). A writ of error coram nobis in the absence of a violation of a constitutional right, cannot lie, see People v. Grimes, 2018 NY Slip Op 07038 Decided on October 23, 2018, Court of Appeals, Difiore, J. The Brooklyn District Attorney's office vacated hundreds of convictions because the convictions

depended on the word of **these ex-police officers** who were now charged and indicted. NESGI'S prosecution was one such case of malicious lies, perjury, and fabricated evidence. See EXHIBIT, INFRA: *NESGI WRIT OF ERROR CORAM NOBIS.*

18. The acts of complained of herein, and the vacatur of 378 convictions are a direct and proximate result of the City of New York and the N.Y.P.D. systemic widespread and pervasive custom and practice of police misconduct, which although not an official policy, took on the force of law. The City was well aware of these practices and cannot claim it was on notice of these practices. The sheer number of vacated cases is testament to this notice.

19. The City of New York and the N.Y.P.D turned a blind eye to these unlawful practices and its willful blindness is well documented, as in the suit of the Colon brothers, 09-cv-0008 (JBW).

20. The official policies, practices and customs of the City of New York and the N.Y.P.D alleged herein violated plaintiff's rights pursuant to the Constitution of the United States.

## CAUSES OF ACTION

## COUNT ONE

### Against Defendants for Violations of U.S.C § 1981, 1983 Fourth and Fourteenth Amendments; Malicious Prosecution on Behalf of NESGI

21. The plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

22. On or about 2005 through 2015, including February 24, 2015, the defendant ex-police officer initiated criminal proceedings against the plaintiff by misrepresenting and

5

falsifying evidence in criminal court. This officer continued his lies by allowing the false information he provided either by himself or to his back-up police officers to be written on Felony Complaints and or told in the grand jury in order to secure indictments. This ex-police officer misrepresented and falsified evidence that created a falsehood in signing the felony complaints and these ex-police officers lies were material for a finding of probable cause. In commencing and continuing the prosecution of plaintiff, defendants caused plaintiff, and those similarly situated, to be falsely charged with acts in violation of the Penal law of State of New York.

23. In the prosecution of NESGI, MARTINS not only played an active role in the prosecution, he was the key witness and the main officer who provided incriminating false statements to the Brooklyn District Attorney's Office (KCDAO). See EXHIBIT E, *INFRA, WRIT OF ERROR CORAM NOBIS.*

24. In the NESGI prosecution, the Brooklyn District Attorney's Office (KCDAO) materially relied on the sworn testimony and evidence provided by these ex-police officers. There was no independent evidence – separate and apart from evidence that depended on these officer's creditability – to corroborate their account.

25. In NESGI'S criminal case, these ex-police officers, acting in their capacity as undercover officers, would allege that they observed a narcotics transaction, or that they acted as undercover officers, and exchanged pre-recorded buy money for drugs (or an observation sale).

26. In NESGI'S criminal overturned conviction, MARTINS operated as the undercover and was the sole witness claiming he observed NESGI possess crack-cocaine on February 24, 2015. SEE EXHIBIT F, *NESGI Superior Court Information, Which Led*

*To* NESGI'S *Conviction And Ultimately Overturned On November 4, 2022.* Plaintiff, and all those similarly situated ultimately were deprived of their liberty by either being incarcerated, placed on probation, parole or supervision.

27. During the course of NESGI'S prosecution MARTINS was regularly in touch with prosecutors regarding the facts and details of NESGI'S criminal case.

28. MARTINS pointed out NESGI in a confirmatory show-up and this information was recorded by the KCDAO and memorialized in a Notice pursuant to CPL 710.30(1)(b) which was prepared by the KCDAO. The statements and participation MARTINS provided in NESGI'S prosecution was critical and at the same time false.

29. Plaintiff did not give defendant CITY, it agents, servants or employee, including the Police Officer MARTINS probable cause to believe that plaintiff, and all those similarly situated, had committed the falsely charged illegal acts. Although NESGI was indicted as a result of the statements MARTINS provided about the case, the indictment was procured by fraud. MARTINS misrepresented evidence used in the Grand Jury to indict NESGI. *Probable cause was vitiated.* MARTINS was investigated by the Internal Affairs Bureau, SEE Exhibit G *IAB INVESTIGATION.*

30. Furthermore, NESGI, upon information and belief, denies participating in any sale of narcotics.

31. NESGI submits that he was hanging out at that time of his arrest.

32. NESGI submits his only crime was hanging out in a public street; nothing more. Mere presence at the scene of a crime, even with knowledge of that crime does not establish probable cause, much less guilt.

7

33.

34. NESGI plead guilty to avoid a much long sentence knowing that MARTINS, the undercover, would testify against him. NESGI was aware that MARTINS in fact had falsely reported that he was observed to have possessed drugs, which was material and likely to influence a jury's verdict. MARTINS had also in fact forwarded this information to Brooklyn prosecutors. For the same reasoning detailed here that probable was vitiated due to fraud by MARTINS, NESGI'S so-called admission at allocation is also nullified.

35. The defendants acted with malice because then MARTINS did not arrest neither the Plaintiff nor those similarly situated with the desire to see the ends of justice served but rather with a false motive or planting and fabricating evidence and thus furthering his career and arrest quota.

36. As a result of the false evidence provided by defendants, Plaintiff was forced under threat of issuance of a warrant to defend against false charges.

37. Plaintiff, was deprived of his liberty by either being incarcerated, placed on probation, parole or supervision. NESGI was sentenced to ONE YEAR incarceration, see EXHIBIT H: NESGI Sentence and Commit.

38. The conduct of the defendants was the direct and proximate cause of plaintiffs' loss of liberty of one year, which violated plaintiffs' statutory rights guaranteed by the laws and Constitution of New York and the United States.

39. On November 4, 2022, plaintiff's conviction was vacated pursuant to a Writ of error Coram Nobis.

40. The court granted the vacateur because there was a due process of law violation and had this information been known at the time NESGI was being prosecuted. NESGI would never have been found guilty, and the outcome of the case would have been absolutely different. Without a finding of a constitutional violation the Writ could not have been granted. Interest An interest in restoring faith in the criminal

## COUNT TWO

## AGAINST DEFENDANTS FOR VIOLATIONS OF 42 U.S.C §. 1983

### for

## FABRICATED EVIDENCE ON BEHALF OF

## NESGI

41. Plaintiff, repeats and reiterates the allegations contained in paragraphs "1" through "40" as if fully set forth herein.

42. That the aforesaid and imprisonment was malicious, unlawful, and not based upon a warrant, probable cause, and or any justification but based on fabricated evidence. The defendant **CITY**, through its agents, servants and/or employees, including the **INDIVIDUAL DEFENDANT** acted in bad faith and without probable cause in committing the aforesaid arrest and imprisonment of **NESGI**

The INDIVIDUAL DEFENDANT fabricated information, to wit he lied about his observation of NESGI'S participation in the sale of crack-cocaine. **The INDIVIDUAL**

9

DEFENDANT also lied regarding their participation in the arrest and prosecution of those people listed in EXHIBIT A.

43. That the aforesaid arrest and imprisonment was made with fabricated evidence as sworn to in the felony criminal complaints.

44. In addition, MARTINS pointed out NESGI and confirmed his identity and the INDIVIDUAL DEFENDANT did the same practice, acting as undercovers. The information the INDIVIDUAL DEFENDANT gave to prosecutors formed the basis for NESGI'S prosecution and he became aware that this fabricated evidence if believed would likely influence a jury's verdict and convict.

45. The INDIVIDUAL DEFENDANT actually met with prosecutors and directly forwarded to the KCDAO incriminating, fabricated evidence that led to NESGI prosecution by superior court information and/or indictments.

46. The INDIVIDUAL DEFENDANTS 'S fabrication of evidence took on many faces. HE filed false information in arrest report's, they repeated false statements to fellow officers who were informed of critical facts which turned out to be false; they repeated false reports when they spoke to prosecutors in person and he committed perjury when they testified in grand juries concerning prosecutions they initiated. SEE Exhibit I, *The New York Times.* "*Detective's Lies Sent Three People to Prison. Prosecutors Charge*".

47. The aforesaid fabrication of evidence caused NESGI to suffer a deprivation of his liberty.

10

. NESGI was sentenced to 1 year incarceration.

48. By reason of the forgoing, the defendants became liable to NESGI in a sum of money which exceeds the jurisdiction limits of all courts.

## COUNT THREE

## AGAINST DEFENDANTS FOR VIOLATIONS OF 42 § 1983 AND THE FOURTEENTH AMENDMENT AND VIOLATIONS FOR DENIAL OF DUE PROCESS OF LAW IN VIOLATION OF THE NEW YORK AND UNITED STATES CONSTITUTION

49. Plaintiff, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force.

50. It is firmly established that a constitutional right exist not to be deprived of liberty on the basis of false evidence fabricated by police officers when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutor's he violates the accused's constitutional right to a fair trial.

51. The plaintiff was denied his right to a fair trial i.e., he was subjected to a deprivation of liberty without due process of law in violation of New York and United States Constitution pursuant to the due process clause of the Fourteenth Amendment by the participation of the aforementioned ex-police officer in ALL of the prosecutions mentioned herein.

52. THE OFFICER created false information and provided that information to the District Attorneys which was then used in NESGI'S prosecution, SEE EXHBIT J .. WRITS by Brooklyn Supreme Court Judge,

58. NESGI had a defense attorney assigned to him or her and the BDAO was represented by their own assistant(s), who in turn represented the police witnesses, the officers whose conduct was under review. Evidence was represented by both sides.. Argument of Counsel was heard and Judge D'EMIC after due deliberation granted all of the petitions.

59. Defendants action resulted in the plaintiff being arrested, handcuffed, incarcerated, forced to appear in court, and endure the fear of being sentenced to jail.

60. By reason of the aforesaid, the plaintiff has been damaged, and he is entitled to compensatory damages in the sum to be determined by the Court.

## COUNT FOUR

## MUNICIPAL LIABILITY: CONSTITUTIONAL VIOLATIONS:

## MONELL CLAIM

61. Plaintiff and the proposed Class reallege and incorporate by reference the allegations set fourth in paragraphs "1" through "60" of this complaint.

62. In short order, the aforementioned ex-police officer, the investigating official lied about the evidence he directly produced, either by his observations or direct participation and interaction with NESGI, knowing that the evidence he provided would likely influence a jury's verdict.

63. NESGI submits the Individual Officer's pattern, custom and practice of falsifying evidence was so widespread and permeant that it had the force

3

*Hon. D'EMIC vacating and dismissing 378 indictments because the defendants were denied due process of law, violative of the New York State and the United States Constitutions.*

53. This aforementioned ex-police officer consciously lied in generating NESGI'S felony complaint.

54. A hearing was held in Brooklyn Supreme Court, to review certain convictions to see if the aforementioned ex-police officer played a key role in bringing about that prosecution

55. Because THIS OFFICER was already thoroughly investigated by The Brooklyn and Manhattan District Attorney's Office, as well as an internal investigation by the same police department THIS OFFICER worked for, and it was found, by unequivocal, substantiated evidence that THIS OFFICER lied and provided material false evidence in numerous documented cases, THIS OFFICER'S credibility was called into question in cases they acted as key witness, from 2005-2015.

56. No independent evidence was found to have convicted these people, other than the word of THESE OFFICERS and instead of investigating each case individually, the prosecutors conducted mass exonerations.

57. The hearing involved here was a hearing to determine if the conviction was obtained in violation of a DUE PROCESS RIGHT of the defendant, under the constitution of this state or of the United States SEE EXHIBIT K sample transcript of a writ of error coram nobis hearing.

12

of an officially adopted policy. This pattern and practice was the cause of NESGI'S injuries.

64. Police corruption is not a new problem that afflicts the N.Y.P.D. The last widespread police scandal involved close to fifty officers of the 30th precinct with hundreds of convictions tossed out due to a custom or practice of "testilying", booming (breaking down doors without search warrants, and flaking people, (planting evidence on innocent people). The 1994 Mollen Commission Report documented all this police corruption. This report is too remote in time, too tangential and too vague to establish the custom and practice the INDIVIDUAL OFFICERS practiced.

65. Fast forward to 2009, and a widespread pattern and practice so persistent and widespread as to practically have the force of law is being carried out by the INDIVIDUAL OFFICERS.

66. Former detective Stephen Anderson testified under a cooperation agreement in the corruption trial of Brooklyn South Narcotics Detective Jason Arbeeny than it was common practice to fabricate drug charges against innocent people to meet arrest quotas. SEE EXHIBIT L: *New York News Article. We Fabricated Drug Charges Against Innocent People to Meet Arrest Quotas.*

67. This practice of meeting quotas impacted the arrest of NESGI.

The individual officer's systemic pattern and practice tainted convictions range from 2011 to 2015 which were obtained after the quota practice came to light. SEE EXHIBIT M, *News Article. Former New York Police Officer Blows Lid Off Drug Planting Scheme.*

14

68. Other lawsuits involving the INDIVIDUAL OFFICERS, including reports from the CCRB are similar enough to NESGI'S own case, that they demonstrate a policy, practice or custom that pervades the NYPD. SEE EXHIBIT N Article Detailing 16 Known Lawsuits against MARTINS, All Similar to NESGI'S Claims in this Complaint.

69. The municipal liability claim under section 1983 is premised upon the underlying constitutional violation of NESGI'S due process rights under the Fourteenth Amendment and violation of their Fourteenth Amendment rights due to malicious prosecution.

70. The INDIVIDUAL OFFICER created false information which he memorialized in NYPD and BDAO cases files and he testified falsely before grand juries and to fellow police officers whose job it was to sign felony criminal complaints under penalty of perjury which all impacted the cases against those arrested. THESE OFFICERS violated the accused' constitutional right to a fair trial.

71. These INDIVIDUAL OFFICER'S widespread pattern and practice of police corruption and misconduct was so widespread that this arrest no only involved at least 300 tainted convictions in Bronx County. The INDIVIDUAL OFFICERS *custom and practice of falsifying Reports covered Hundreds of cases in Kings County and New York County.* SEE EXHIBIT O, *Brooklyn District Attorneys Will Purge 90 Convictions Involving an Indicted Detective* (FRANCO).

72. Considering the various allegations made by NESGI (especially those lawsuits already filed by my office against the City of New York and

these officers), they have provided enough detail about their own arrests and convictions to identify a factually similar pattern, practice, and custom so persistent and widespread throughout the N.Y.P.D so as to give these patterns of corrupt behavior by **the INDIVIDUAL OFFICERS** the force and flavor of law.

73. The elements of a Monell Claim are met here because a widespread pattern of corrupt behavior that constituted a custom or usage with the force of law caused **NESGI** to be subjected to the deprivation of a fair trial in violation of the New York State and United States Constitutions. See **EXHIBIT A-0** attached to this complaint as EXHIBITS.

74. All totaled, at least three hundred and seventy-eight (378) convictions have been vacated because of the **INDIVIDUAL OFFICER'S** key role in those convictions. Prior to 2011 the responsible policy making officials of defendant **CITY** knew or in the exercise of reasonable care should have known, that individual police officers of the **CITY** had engaged in a pattern and practice of illegal and unconstitutional conduct, including fabricating evidence, malicious prosecutions, and the denial of due process of law. Specifically, defendant **CITY** knew or should have known that the INDIVIDUAL OFFICERS had maliciously prosecuted and denied due process of law to numerous people, resulting in tainted prosecutions.

75. Despite knowledge of the aforesaid, pattern and practice defendant **CITY** failed to properly investigate this conduct and failed to supervise, train and discipline the officers of the New York **CITY** Police Department, Defendant City adopted a "hands off" policy of custom with regard to such illegal and unconstitutional acts committed by police officers, which encouraged the individual defendants in this case to believe

that they could violated the constitutional rights of the plaintiff with impunity and with the explicit or tacit approval of the defendant CITY, in violation of 42 U.S.C § 1983.

76. As a result of the foregoing, plaintiff sustained the damages and injuries previously descried and seek compensatory damaged from the CITY of New York.

## DAMAGES

77. As a direct and proximate result of the said acts of the defendant, JEFFREY NESGI, , suffered the following injuries and damages:

   a. Violations of their due process rights under the Fourth and Fourteenth Amendments to the Constitutions;

   b. Loss of physical liberty due to incarceration and other forms of restriction on liberty;

   c. Further restriction of his liberty due to forced court appearances;

   d. Humiliation, embarrassment, injury, to reputation, physical abuse;

   e. Extreme emotional distress

   f. Sever disruption of family

78. Defendant INDIVIDUAL OFFICER, through his conduct of corruption, violated the civil rights of close to 378 people, whose convictions were vacated and dismissed.

79. Many more people were denied due process of law BY THESE CORRUPT EX-POLICE OFFICERS, violative of the United States Constitution.

17

80. The Plaintiff deserves a meaningful opportunity to recover damages from these constitutional violations.

81.

   I. Award compensatory damages in an amount to be determined by the court;

   II. Award attorney's fees as fair and reasonable compensation for services rendered in connection with this action;

   III. Grant further relief that may be just and proper.

Dated: New York, New York
September 2, 2025

Respectfully Submitted:

/s/ Rudy Velez

**Law Office of Rudy Velez & Associates**
Rudy Velez/ RV7160
930 Grand Concourse
Suite 1A
Bronx, New York 10451
(917) 674-0573
rvesq@yahoo.com